IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Lynchburg Division

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/2/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
     DEPUTY CLERK

**CRYSTAL BOND,**

and

**DOUGLAS BOND,**
    Plaintiffs,

v.                        Case No. 6:23CV00059

**LOGAN SKILLMAN, in his individual capacity,**

and

**STEPHEN RIPPY, in his individual capacity,**

and

**JOHN GLERUM, in his individual capacity,**

and

**SVETLA NIKOLOVA-WEAVER, in her individual capacity,**

    Defendants.

## COMPLAINT

Comes now your Plaintiffs, Crystal Bond and Douglas Bond, by counsel, and for this complaint against Defendants Logan Skillman, Stephen Rippy, John Glerum, and Svetla Nikolova-Weaver, each in his or her individual capacity, states as follows:

1. This case alleges constitutional violations under 42 U.S.C. § 1983, and associated state claims. As such, this Court has subject matter jurisdiction for claims involving a federal

1

question under 28 U.S.C. § 1331 and pendent jurisdiction for the remaining claims under 28 U.S.C. § 1367.

2. The events at issue in this suit occurred in Lynchburg, Virginia, and therefore this Division and District are the proper venue for this suit.

3. Crystal Bond and Douglas Bond are both Virginia residents and natural citizens of the United States. They are joined as plaintiffs pursuant to Federal Rule of Civil Procedure 20, as their claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and questions of law or fact common to all plaintiffs will arise in the action.

4. At all times relevant to this suit, Logan Skillman, Stephen Rippy, John Glerum, and Svetla Nikolova-Weaver were sworn officers of the Lynchburg Police Department, acting under color of law. They are joined as defendants pursuant to Federal Rule of Civil Procedure 20, as rights to relief arise out of the same transaction, occurrence, or series of transactions or occurrences, and questions of law or fact common to all plaintiffs will arise in the action.

5. On or about January 6, 2022,[1] Crystal Bond experienced mechanical difficulties with her vehicle as she was driving it. She came to believe a strut had dropped. She attempted to nurse the vehicle home, but ultimately pulled into the Express Lane store at 3001 Memorial

---

[1] The facts alleged in this Complaint are based in good faith on the memory of the plaintiffs, but associated with a stressful situation. They have, through their counsel, attempted to verify the details by obtaining a copy of the footage of the events through the Virginia Freedom of Information Act. The Lynchburg Police Department has declined to provide the videos, alleging that they are exempt from mandatory disclosure as "Records of . . . administrative investigations relating to allegations of wrongdoing by employees of a law-enforcement agency." *See* Va. Code § 2.2-3706(B)(9). Similarly, the plaintiffs, by counsel, have sought information about the training of the canine involved, and these were withheld as "personnel information"-- even though a dog is not "person"-nel. *See* Va. Code § 2.2-3705.1(1). Therefore, the plaintiffs anticipate amending this complaint once the Lynchburg Police produce the information it has chosen to withhold.

2

Ave., in Lynchburg, VA, and waited for her father Douglas Bond to come to the location to assist her.

6.      After reviewing the condition of the vehicle, the Bonds attempted to drive the vehicle home slowly, using backroads. Crystal Bond pulled the vehicle onto Norma Street, and the vehicle stopped responding to her attempts to accelerate. She stopped and exited her vehicle, and went to her father's vehicle immediately behind her, to try to determine what to do next.

7.      Crystal Bond observed a marked police vehicle, an SUV, immediately behind Douglas Bond's vehicle, but the officer—which proved to be Logan Skillman—did not exit the vehicle or activate his lights at the time.

8.      Douglas Bond exited his vehicle, and attempted to see what was wrong with Crystal Bond's vehicle. Believing the vehicle may have to be towed, Crystal began to move her belongings from the vehicle.

9.      At that point, the Skillman activated his lights, exited his vehicle, and approached the Bonds, to inquire what the situation was. They explained. He then ordered the Bonds to each get into their respective vehicles and produce their drivers' licenses, and they complied. They remained in their vehicles for approximately fifteen minutes. During this time, upon information and belief, Skillman did not diligently process the traffic stop, but instead delayed concluding the traffic stop, intending to conduct a canine search of the vehicles and determined not to release the Bonds from detention until the canine search was complete.

10.     Two more officers, believed to be Stephen Rippy and John Glerum, arrived. Rippy was handling a canine.

11.     One or two of the officers approached Douglas Bond and told him he didn't do anything wrong, but they needed to search his vehicle. Douglas Bond did not consent, and asked

3

if the officer had a search warrant. At that point, one officer, in the presence of the other officers who could have intervened but did not, ordered Douglas Bond to exit his vehicle and to go to the rear of the vehicle.

12. Another officer approached Crystal Bond and asked to search her vehicle. She verbally refused her consent, and the officer, in the presence of the other officers who could have intervened but did not, ordered her to exit her vehicle and to go to the rear of the Bonds' vehicles.

13. Rippy began to approach Douglas Bond's vehicle with the canine. Douglas Bond protested that Rippy should not allow the dog to jump onto the side of the car. Contrary to this clear instruction, Stephen Rippy, in the presence of the other officers who could have intervened but did not, directed the dog to jump onto the vehicle, near the open windows. The Rippy also opened the doors of the vehicle, allowing the dog access to the interior, and allowing Rippy to peer into portions of the vehicle he could not otherwise see from outside the vehicle, and he did peer into those portions of the vehicle. Rippy then moved the dog to Crystal Bond's vehicle and proceeded to lead the dog around the vehicle. Meanwhile, Skillman, in the presence of the other officers who could have intervened but did not, discontinued processing the licenses or taking action to conclude the traffic stop he had initiated, in order to participate in or observe the canine in action.

14. At some point Rippy claimed that the dog alerted on Crystal Bond's vehicle, meaning that he claimed the dog signaled that it sensed the presence of some contraband. Upon information and belief, however, either Rippy knowingly falsely claimed the dog alerted (perhaps by causing the dog to imitate an alert), or he knew the dog was not properly trained to

4

reliably alert. Upon information and belief, this misrepresentation or lack of training was known to the other officers.

15. One or more of the officers, in the presence of the other officers who could have intervened but did not, handcuffed each of the Bonds, causing them pain. Additionally, over the peaceful protests of Crystal Bond, including but not limited to her request for a female officer, Officer Skillman in the presence of the other officers who could have intervened but did not, pressed the back of his hand along Crystal Bond's body, including her breast and buttocks, and one of the officers, in the presence of the other officers who could have intervened but did not, placed her in the rear of the police vehicle.

16. The officers continued their detention of the Bonds, as they slowly searched each of their vehicles, beginning with Douglas Bond's vehicle, including containers and closed compartments. After searching Douglas Bond's vehicle, the officers placed Crystal Bond inside of one of the police vehicles, in an uncomfortable position and environment.

17. Additionally, in the presence of the other officers who could have intervened but did not, Officer Svetla Nikolova-Weaver arrived and conducted an intrusive search of Crystal Bond's person, including under her shirt, by visual inspection and touch.

18. Officers approached each of the Bonds individually, in turn, in the presence of the other officers who could have intervened but did not, without having read them their Miranda rights, and asked questions implying as a premise that the officers had found illegal narcotics in each of their vehicles. Each of the Bonds contradicted the officers, denying the presence of illegal narcotics in their respective vehicles, and the officers responded by pretending they had been joking, as they in fact found no illegal narcotics or other contraband in the vehicles.

19. One or more of the officers, upon information and belief in the presence of the other officers who could have intervened but did not, took fifty dollars from the vehicle of Crystal Bond, without logging it as seized property. The search of her vehicle also resulted in her prescription eyeglasses being broken.

20. After a detention of some hours, and having only issued a traffic summons to Crystal Bond for improperly stopping a vehicle on the highway in violation of Code § 46.2-888, the officers released both of the Bonds.

COUNT I
VIOLATION OF FOUR AMENDMENT, INCORPORATED BY FOURTEENTH
AMENDMENT, AND MADE ACTIONABLE BY 42 U.S.C. § 1983
Prolonging the Detention of Crystal Bond
Against Skillman, Rippy, and Glerum

21. The foregoing allegations of fact are incorporated by this reference.

22. The circumstances of the detention of the Bonds were such that Skillman, Rippy, and Glerum lacked reasonable suspicion to extend the traffic stop to conduct a canine drug-detection sniff, much less a thorough search of the vehicles. *See Rodriguez v. United States*, 575 U.S. 348, 348 (2015). Yet Officer Skillman, at least in part in the presence of Rippy and Glerum, who could have intervened but did not, discontinued diligently attending to the reason for the traffic or the attending safety concerns before the canine alerted, thereby needlessly and unconstitutionally extending the traffic stop. His conduct needlessly and unreasonably extending the traffic stop included, inter alia:

    a. Deliberately failing to diligently attend to the reason for the traffic stop prior to the arrival of the canine, including upon information and belief: taking the time to unnecessarily summons the canine unit; failing to attend to any safety concerns related to the traffic stop after ordering the Bonds back into their vehicles; failing

6

   to diligently issue any summons for the traffic stop or to complete his check the driver's licenses, outstanding warrants, and automobiles' registration and proof of insurance; and failing to address the fact that the vehicle had a mechanical breakdown that caused the Bonds to be at the location.

  b. After the canine arrived, and before the canine purportedly alerted, while in the presence of the Rippy and Glerum who could have intervened to prevent the constitutional violation but did not, attending to the canine search, including soliciting permission from the Bonds to search their vehicles, removing them from their vehicles, and observing or participating in the canine search.

23. These delays unreasonably prolonged the seizure of the Bonds.

24. Furthermore, Officer Rippy, in the presence of the other Skillman and Glerum, who could have intervened to prevent the constitutional violation but did not, unreasonably extended the traffic stop by falsely claiming that the canine alerted to the presence of contraband at Crystal Bond's car, or otherwise by knowingly relying on the purported alert of an improperly trained canine. Upon information and belief, the Skillman and Glerum knew Officer Rippy was falsely claiming the canine alerted, or knew the caning was not adequately trained to reliably alert to the presence of contraband.

25. Furthermore, Skillman, Rippy, and Glerum unreasonably extended the traffic stop by searching Douglas Bond's vehicle, without reasonable suspicion that it contained contraband.

26. Finally, Skillman, Rippy, and Glerum unreasonably extended the traffic stop by searching Crystal Bond's person and vehicle, without reasonable suspicion that either contained contraband.

7

27. In conjunction with the seizure of Crystal Bond's person through this prolonged detention, they put her in handcuffs and searched her person and vehicle, causing pain, embarrassment, invasion of her privacy, and mental distress, in addition to the loss of liberty.

28. Skillman, Rippy, and Glerum violated Crystal Bond's Fourth Amendment rights by prolonging their detention of her, causing her inconvenience, the loss of liberty, pain, embarrassment, and mental distress. They are liable to her for compensatory damages under 42 U.S.C. § 1983.

29. Skillman, Rippy, and Glerum each acted with a callous indifference to the constitutional rights of Crystal Bond, and therefore is liable to her for punitive damages under 42 U.S.C. § 1983, at the discretion of the finder of fact.

## COUNT II
### VIOLATION OF FOUR AMENDMENT, INCORPORATED BY FOURTEENTH AMENDMENT, AND MADE ACTIONABLE BY 42 U.S.C. § 1983
Prolonging the Detention of Douglas Bond
Against Skillman, Rippy, and Glerum

30. The foregoing allegations of fact are incorporated by this reference.

31. Skillman, Rippy, and Glerum violated Douglas Bond's Fourth Amendment rights by prolonging their detention of him, causing her inconvenience, the loss of liberty, pain, embarrassment, and mental distress. They are liable to her for compensatory damages under 42 U.S.C. § 1983.

32. Skillman, Rippy, and Glerum each acted with a callous indifference to the constitutional rights of Douglas Bond, and therefore is liable to him for punitive damages under 42 U.S.C. § 1983, at the discretion of the finder of fact.

COUNT III
VIRGINIA WRONGFUL IMPRISONMENT
Prolonging the Detention of Crystal Bond
Against Skillman, Rippy, and Glerum

33. The foregoing allegations of fact are incorporated by this reference.

34. The conduct of Skillman, Rippy, and Glerum were undertaken by the agreement of the other officers, or at the encouragement of the other officers, creating joint liability.

35. Skillman, Rippy, and Glerum are jointly and severally, or severally, liable to Crystal Bond for wrongful imprisonment.

36. Skillman, Rippy, and Glerum committed this intentional misconduct, and are and therefore are liable to him for punitive at the discretion of the finder of fact.

COUNT IV
VIRGINIA WRONGFUL IMPRISONMENT
Prolonging the Detention of Douglas Bond
Against all of the officers

37. The foregoing allegations of fact are incorporated by this reference.

38. The conduct of Skillman, Rippy, and Glerum were undertaken by the agreement of the other officers, or at the encouragement of the other officers, creating joint liability.

39. Skillman, Rippy, and Glerum are jointly and severally, or severally, liable to Douglas Bond for wrongful imprisonment.

40. Skillman, Rippy, and Glerum committed this intentional misconduct, and are and therefore are liable to him for punitive at the discretion of the finder of fact.

COUNT V
VIOLATION OF FOUR AMENDMENT, INCORPORATED BY FOURTEENTH
AMENDMENT, AND MADE ACTIONABLE BY 42 U.S.C. § 1983
Illegal Search and Seizure of Crystal Bond's Vehicle, and Property Therein
Against Skillman, Rippy, and Glerum

41. The foregoing allegations of fact are incorporated by this reference.

42.     Skillman, Rippy, and Glerum instigated an unreasonable search of the interior (including the under the hood and trunk) of Crystal Bond's vehicle, including all containers and enclosed compartments therein, and informally seizing fifty dollars without returning the same, all unsupported by probable cause, inasmuch as the Bonds were not within reaching distance of the vehicle, and had been detained behind the vehicle, and there was no reason to believe the officers would find evidence concerning the legal basis of the traffic stop in the vehicle, and the fifty dollars was not evidence of a crime and was not treated as such. As stated above, a properly trained canine did not signal the presence of contraband in the vehicle, including the containers and compartments.

43.     Skillman, Rippy, and Glerum violated Crystal Bond's Fourth Amendment rights, invading Crystal Bond's property rights and privacy, and it prolonged the loss of her liberty. They are liable to her for compensatory damages under 42 U.S.C. § 1983.

44.     Skillman, Rippy, and Glerum each acted with a callous indifference to the constitutional rights of Crystal Bond, and therefore is liable to her for punitive damages under 42 U.S.C. § 1983, at the discretion of the finder of fact.

COUNT VI
VIOLATION OF FOUR AMENDMENT, INCORPORATED BY FOURTEENTH
AMENDMENT, AND MADE ACTIONABLE BY 42 U.S.C. § 1983
Illegal Search and Seizure of Douglas Bond's Vehicle, and Property Therein
Against all of the officers

45.     The foregoing allegations of fact are incorporated by this reference.

46.     Skillman, Rippy, and Glerum instigated an unreasonable search of the interior of Douglas Bond's vehicle, including containers and enclosed compartments therein, and within the hood and trunk, unsupported by probable cause, inasmuch as the Bonds were not within reaching distance of the vehicle, and had been detained behind the vehicle, and there was no reason to

believe the officers would find evidence concerning the legal basis of the traffic stop in the vehicle. As stated above, the canine did not alert to the presence of contraband, even after being led around the vehicle, and being induced to jump on the sides of the vehicle to smell through the windows, and smelling after Officer Rippy opened doors. Yet knowing this, the officers still proceeded to search the interior compartment of the vehicle.

47. Skillman, Rippy, and Glerum violated Douglas Bond's Fourth Amendment rights, invading Douglas Bond's property rights and privacy, and it prolonged the loss of her liberty. They are liable to her for compensatory damages under 42 U.S.C. § 1983.

48. Skillman, Rippy, and Glerum acted with a callous indifference to the constitutional rights of Douglas Bond, and therefore is liable to her for punitive damages under 42 U.S.C. § 1983, at the discretion of the finder of fact.

## COUNT VII
### VIOLATION OF VIRGINIA CODE § 19.2-59
### Warrantless Search of Crystal Bond's Vehicle
### Against Skillman, Rippy, and Glerum

49. The foregoing allegations of fact are incorporated by this reference.

50. Skillman, Rippy, and Glerum mutually agreed to and jointly cooperated in, and by their conduct and words encouraged each other to participate in, a search of Crystal Bond's vehicle, without a warrant and without an applicable exception to the warrant requirement, in violation of Virginia Code § 19.2-59.

51. Skillman, Rippy, and Glerum are therefore jointly liable to Crystal Bond in both compensatory and punitive damages.

COUNT VIII
VIOLATION OF VIRGINIA CODE § 19.2-59
Warrantless Search of Douglas Bond's Vehicle
Against Skillman, Rippy, and Glerum

52.    The foregoing allegations of fact are incorporated by this reference.

53.    Skillman, Rippy, and Glerum mutually agreed to and jointly cooperated in, and by their conduct and words encouraged each other to participate in, a search of Douglas Bond's vehicle, without a warrant and without an applicable exception to the warrant requirement, in violation of Virginia Code § 19.2-59.

54.    The officers and therefore jointly liable to Douglas Bond in both compensatory and punitive damages.

COUNT IX
VIOLATION OF FOUR AMENDMENT, INCORPORATED BY FOURTEENTH
AMENDMENT, AND MADE ACTIONABLE BY 42 U.S.C. § 1983
First Illegal Search of Crystal Bond's Person
Against Skillman, Rippy, and Glerum

55.    The foregoing allegations of fact are incorporated by this reference.

56.    Officer Skillman, in the presence of the other officers who could have intervened but did not, and over the objections of the Crystal Bond, searched Crystal Bond by pressing the back of his hand along her body, including on her buttocks and breasts, without reasonable suspicion that she had contraband or a weapon, using the knowingly false or knowingly unreliable alert of the canine as an excuse.

57.    Skillman, Rippy, and Glerum violated Crystal Bond's Fourth Amendment rights by this search, causing her invading her privacy, causing her discomfort, and causing her mental distress. They are liable to her for compensatory damages under 42 U.S.C. § 1983.

12

58. Skillman, Rippy, and Glerum each acted with a callous indifference to the constitutional rights of Crystal Bond, and therefore is liable to her for punitive damages under 42 U.S.C. § 1983, at the discretion of the finder of fact.

### COUNT X
### VIOLATION OF VIRGINIA CODE § 19.2-59
First Warrantless Search of Crystal Bond's Person
Against Skillman, Rippy, and Glerum

59. The foregoing allegations of fact are incorporated by this reference.

60. Skillman, at Rippy's instigation of a false or unreliable claim of a caning alert, and with the presence and encouragement of Rippy and Glerum, engaged in an unlawful warrantless search of Crystal Bond, in violation of Virginia Code § 19.2-59.

61. The officers and therefore jointly liable to Crystal Bond in both compensatory and punitive damages.

### COUNT XI
### BATTERY
First Warrantless Search of Crystal Bond's Person
Against Skillman, Rippy, and Glerum

62. The foregoing allegations of fact are incorporated by this reference.

63. Skillman, at Rippy's instigation of a false or unreliable claim of a caning alert, and with the presence and encouragement of Rippy and Glerum, engaged in an offensive touching of Crystal Bond by handcuffing her and running his hand along inter alia her buttocks and breast, without consent, justification, or excuse.

64. The officers and therefore jointly liable to Crystal Bond in both compensatory and punitive damages.

Case 6:23-cv-00059-NKM-CKM   Document 1   Filed 10/02/23   Page 14 of 15
Pageid#: 14

## COUNT XII
### VIOLATION OF FOUR AMENDMENT, INCORPORATED BY FOURTEENTH AMENDMENT, AND MADE ACTIONABLE BY 42 U.S.C. § 1983
#### Second Illegal Search of Crystal Bond's Person
#### Against All the Officers

65. The foregoing allegations of fact are incorporated by this reference.

66. Nikolova-Weaver, at the instigation of the other officers, and in the presence of the other officers, who could have intervened to prevent the constitutional violation but did not, conducted a visual and physical search of Crystal Bond's person on the roadside, including under her clothing and viewing her breast and underwear, without reasonable suspicion that she had contraband or a weapon, using the knowingly false or knowingly unreliable alert of the canine as an excuse.

67. The defendants violated Crystal Bond's Fourth Amendment rights by this search, causing her invading her privacy, causing her discomfort, and causing her mental distress. They are liable to her for compensatory damages under 42 U.S.C. § 1983.

68. The defendants each acted with a callous indifference to the constitutional rights of Crystal Bond, and therefore is liable to her for punitive damages under 42 U.S.C. § 1983, at the discretion of the finder of fact.

## COUNT XIII
### VIOLATION OF VIRGINIA CODE § 19.2-59
#### Second Illegal Search of Crystal Bond's Person
#### Against All the Officers

69. The foregoing allegations of fact are incorporated by this reference.

70. Nikolova-Weaver, at the instigation of the other officers, and in the presence of the other officers, and with the encouragement of the other offices, engaged in an unlawful warrantless search of Crystal Bond, in violation of Virginia Code § 19.2-59.

14

71.     The officers and therefore jointly liable to Crystal Bond in both compensatory and punitive damages.

## COUNT XIV
## BATTERY
Second Illegal Search of Crystal Bond's Person
Against All the Officers

72.     The foregoing allegations of fact are incorporated by this reference.

73.     Nikolova-Weaver, at the instigation of the other officers, and in the presence of the other officers, and with the encouragement of the other offices, engaged in an offensive touching of Crystal Bond, without consent, justification, or excuse, in conducting her search of Crystal Bond.

74.     The officers and therefore jointly liable to Crystal Bond in both compensatory and punitive damages.

Wherefore, the Plaintiffs each respectfully request compensatory and punitive damages in the amount of $50,000, from the defendants severally, or jointly and severally, plus attorney fees and costs under 42 U.S.C. Section 1988, and all such further relief as may be appropriate.

By:  /s/ Andrew T. Bodoh
Counsel

Andrew T. Bodoh, Esq. (VSB 80143)
andrew.bodoh@robertslaw.org
**THOMAS H. ROBERTS & ASSOCIATES, P.C.**
105 South 1st Street
Richmond, Virginia 23219
Tel: 804-783-2000
Fax: 804-783-2105
*Counsel for Crystal Bond and Douglas Bond*

15